# IN THE UNITED STATES DISTRICT COURT
# FOR THE NORTHERN DISTRICT OF MISSISSIPPI
# WESTERN DIVISION

**CANAL INSURANCE COMPANY**                                                                 **PLAINTIFF**

**V.**                                                      **CIVIL ACTION NO. 3:09-CV-24-SA-SAA**

**P.S. TRANSPORT, INC. and BERNETTA**
**COLEMAN**                                                                                **DEFENDANTS**

## MEMORANDUM OPINION

For the reasons stated below, the Court denies Canal Insurance Company's Motion to Enforce Settlement Agreement [31], grants Canal Insurance Company's Motion for Summary Judgment [35], and denies Bernetta Coleman's Motion for Summary Judgment [51].

## I. BACKGROUND

On July 14, 2004, Timothy Briggs was backing a 1995 International Truck into his driveway when a collision occurred between Briggs' truck and a vehicle occupied by Glen Coleman and Bernetta Coleman. Briggs owned the truck and leased it to P.S. Transport, Inc. (PST). At the time of the accident, the truck was not pulling a trailer or otherwise carrying cargo, as Briggs was returning home after having performed his duties as a driver for PST.

Two insurance policies were effective at the time of the accident. First, Canal Insurance Company (Canal) issued a Basic Automobile Liability Policy bearing policy number 455687 to Timothy Briggs (the "Briggs policy"). Second, Canal issued a Basic Automobile Liability Policy bearing policy number 438979 to PST (the "PST policy"). In pertinent part, the PST policy provides coverage for vehicles "owned by the named insured and described in the declarations." The PST policy also includes a federally-mandated endorsement that, in general terms, obliges insurers to indemnify motor carriers for judgments obtained against them by third parties.

On June 19, 2007, Glen and Bernetta Coleman filed a lawsuit in the Circuit Court of

Marshall County, Mississippi against Briggs and PST, demanding monetary damages for injuries sustained in the accident. On March 9, 2009, Canal filed its Complaint with this Court, seeking a declaratory judgment that it had no duty to defend Briggs or PST in the state court action, and that no coverage was afforded under either policy for the claims made against Briggs and PST in the state court action.

On July 20, 2009, Canal filed its Motion to Enforce Settlement Agreement [31], alleging that Defendants Glen and Bernetta Coleman had entered into a mediation agreement obliging them to execute a release of all claims under the Briggs policy. On July 21, 2009, Canal filed its Motion to Amend the Complaint, seeking to abandon its request for a declaratory judgment as to the Briggs policy, which the Court granted on February 16, 2010. Accordingly, the Court dismissed Briggs from the case. The Court also dismissed Glen Coleman from the case according to the parties' stipulation. Finally, the parties have also filed cross-motions for summary judgment [35, 51], each party essentially seeking a ruling in its favor as to coverage issues surrounding the PST policy.

## II. MOTION TO ENFORCE SETTLEMENT AGREEMENT

Canal alleges that a settlement agreement was reached at a mediation conducted on May 12, 2009, by order of the state court and requests that the Court enforce the alleged settlement agreement. The purported contract is titled "Mediation Agreement," and it provides:

> Canal Insurance will pay to Bernetta Coleman the sum of $100,000.00 in exchange for a release of any further obligation of Canal to Coleman under the terms of that policy of insurance on the vehicle of Briggs, being policy number 455687 (declarations page attached).
>
> This release in no way release the claims of plaintiffs against Briggs, but attributes Briggs and P.S. Transport a credit for $100,000.00 against any judgment rendered against Briggs and/or P.S. Transport. Canal is likewise entitled to a $100,000.00 credit against any sum it is obligated to pay under its policy or MCS-90 endorsement with P.S. Transportation. This agreement does not increase the limits of liability

2

under the P.S. Transportation policy or MCS-90 endorsement. P.S. Policy # 438979.

The mediation agreement was signed by Bernetta Coleman, Glen Coleman, the Colemans' attorney, a representative of Canal, and Canal's attorney.

The Court granted Canal's Motion to Amend and deemed its Amended Complaint to be filed. Canal abandoned its request for declaratory judgment as to the Briggs policy. Accordingly, the Briggs policy is no longer at issue in this case. Any purported release of claims under that policy and the effect that such a release may have on the obligations and duties of the relevant parties is no longer within the scope of the declaratory judgment action currently before the Court. Therefore, the Court denies Canal's Motion to Enforce the Mediation Agreement.

### III. MOTIONS FOR SUMMARY JUDGMENT

The parties' cross-motions for summary judgment involve two substantive issues in dispute: 1) whether Canal has a duty to defend PST in the state court action; and 2) the extent, if any, of Canal's obligations pursuant to the federally-mandated MCS-90 endorsement to the PST policy.

*A.    Summary Judgment Standard*

"Summary judgment is appropriate when the evidence shows that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." Salinas v. AT&T Corp., 314 Fed. Appx. 696, 697 (5th Cir. 2009) (quoting FED. R. CIV. P. 56(c)). "An issue of material fact is genuine if a reasonable jury could return a verdict for the nonmovant." Agnew v. Washington Mut. Fin. Group, LLC, 244 F. Supp. 2d 672, 675 (N.D. Miss. 2003) (citing Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 248, 106 S. Ct. 2505, 91 L. Ed. 2d 202 (1986)).

If a movant shows that there is no genuine issue of material fact, the nonmovant must "go beyond the pleadings and by . . . affidavits, or by the 'depositions, answers to interrogatories, and

3

admissions on file,' designate 'specific facts showing that there is a genuine issue for trial.'" Celotex Corp v. Catrett, 477 U.S. 317, 324, 106 S. Ct. 2548, 91 L. Ed. 2d 265 (1986) (quoting FED. R. CIV. P. 56(c), (e)). "When a motion for summary judgment is properly made and supported, an opposing party may not rely merely on allegations or denials in its own pleading; rather, its response must . . . set out specific facts showing a genuine issue for trial." FED. R. CIV. P. 56(e)(2). "Conclusional allegations and denials, speculation, improbable inferences, unsubstantiated assertions, and legalistic argumentation do not adequately substitute for specific facts showing a genuine issue for trial." Oliver v. Scott, 276 F.3d 736, 744 (5th Cir. 2002).

The Court is not to weigh the evidence or engage in credibility determinations. Anderson, 477 U.S. at 249, 106 S. Ct. 2505; Deville v. Marcantel, 567 F.3d 156, 164 (5th Cir. 2009). "[T]he court must view the facts in the light most favorable to the non-moving party and draw all reasonable inferences in its favor." Deville, 567 F.3d at 164.

## B.   *Background Law*

Federal law prescribes a minimum level of financial responsibility to third parties for an insured who is engaged in the transportation of property. See Canal Ind. Co. v. Galindo, 2009 U.S. App. LEXIS 20492, *2 (5th Cir. Sept. 14, 2009); 49 U.S.C. § 31139. The pertinent statute provides:

> The Secretary of Transportation shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts established by the Secretary covering public liability, [and] property damage . . . for the transportation of property by motor carrier or motor private carrier in the United States between a place in a State and – (A) a place in another State; (B) another place in the same State through a place outside of that State; or (C) a place outside the United States.

4

49 U.S.C. § 31139(b)(1).[1]  In accordance with the mandate of Section 31139, the Secretary of Transportation promulgated regulations concerning minimal levels of financial responsibility to third parties for those engaged in the for-hire transportation of property.  See 49 C.F.R. §§ 387.1-387.17. "A provision, designated as the 'MCS-90 endorsement,' is added to liability policies as a result of the statute's mandate."  Galindo, 2009 U.S. App. LEXIS 20492 at *2.

The MCS-90 endorsement, titled "Uniform Motor Carrier Bodily Injury and Property Damage Liability Insurance Endorsement," provides:

> The insurance policy to which this endorsement is attached provides automobile liability insurance and is amended to assure compliance by the insured within the limits stated herein, as a motor carrier of property, with Sections 29 and 30 of the Motor Carrier Act of 1980 and the rules and regulations of the Federal Highway Administration (FHWA) and the Interstate Commerce Commission (ICC).
>
> In consideration of the premium stated in the policy to which this endorsement is attached, the insurer (the company) agrees to pay, within the limits of liability described herein, any final judgment recovered against the insured for public liability resulting from negligence in the operation, maintenance or use of motor vehicles subject to the financial responsibility requirements of Sections 29 and 30 of the Motor Carrier Act of 1980 regardless of whether or not each motor vehicle is specifically described in the policy and whether or not such negligence occurs on any route or in any territory authorized to be served by the insured or elsewhere.  Such insurance as is afforded for public liability does not apply to injury to or death of the insured's employees while engaged in the course of their employment, or property transported by the insured, designated as cargo.
>
> It is understood and agreed that no condition, provision, stipulation, or limitation contained in the policy, this endorsement, or any other endorsement thereon, or violation thereof, shall relieve the company from liability or from the payment of any final judgment, within the limits of liability herein described, irrespective of the financial condition, insolvency or bankruptcy of the insured.  However, all terms, conditions, and limitations in the policy to which the endorsement is attached shall remain in full force and effect as binding between the insured and the company. The insured agrees to reimburse the company for any payment made by the company on

---

[1] A statute nearly identical in language applies to vehicles transporting passengers.  See 42 U.S.C. § 31138.

account of any accident, claim, or suit involving a breach of the terms of the policy, and for any payment that the company would not have been obligated to make under the provisions of the policy except for the agreement contained in this endorsement.

See 49 C.F.R. § 387.15.[2] "The endorsement . . . was directed at trucking companies' practice of using leased or borrowed vehicles, which often resulted in evasion of safety requirements and confusion about financial responsibility for damage caused by the operation of the vehicles." Wells v. Gulf Ins. Co., 484 F.3d 313, 316 (5th Cir. 2007). The MCS-90 endorsement is, in effect, a form of "suretyship by the insurance carrier to protect the public - a safety net." T.H.E. Ins. Co., 242 F.3d at 672 (quoting Canal Ins. Co. v. Carolina Cas. Ins. Co., 59 F.3d 281, 283 (1st Cir. 1995)).

The MCS-90 endorsement "is not a private contract in which the parties negotiated the terms." Lincoln Gen. Ins. Co. v. Garcia, 501 F.3d 436, 441 (5th Cir. 2007) (addressing MCS-90B endorsement). Rather, it is mandated by federal law, and the parties are not permitted to negotiate or change its terms. Id. Therefore, while the endorsement may "[read] out . . . those clauses in the policy that would limit the ability of a third party to recover for his loss," it does not similarly extinguish those clauses which affect "the insured or other insurers who clamor for part or all of the coverage." T.H.E. Ins. Co., 242 F.3d at 673. Succintly put, "when the protection of injured members of the public is not at stake, the MCS-90 and the relevant federal regulations do not address coverage for the purpose of disputes between the insured and the insurer." Id.

*C.    Duty to Defend*

Coleman maintains that Canal has a duty to defend PST in the state court action. As the

---

[2] "The MCS-90 was required under the regulations of the now-defunct Interstate Commerce Commission ("ICC"). When the ICC was abolished, its authority to regulate carriers was transferred to the Department of Transportation, but the old regulations remain in effect until new ones are promulgated." T.H.E. Ins. Co. v. Larsen Intermodal Servs., 242 F.3d 667, 672 (5th Cir. 2001) (citing John Deere Ins. Co. v. Nueva, 229 F.3d 853, 855 n. 3 (9th Cir. 2000)).

MCS-90 endorsement does not address disputes between the insured and the insurer, it "does not impose a duty to defend on the insurer where such a duty would not have otherwise existed." Id. at 677. The Fifth Circuit Court of Appeals has explained:

> [T]he MCS-90 leaves unaffected any provisions of the Policy that do not impact the insurer's duty to compensate injured members of the public. . . . [A]lthough the MCS-90 itself does not impose a duty to defend upon the insurer, neither does it negate such a duty that might fall upon the insurer under the Policy as interpreted according to state law.

Id.; see also OOIDA Risk Retention Group, Inc. v. Williams, 579 F.3d 469, 478 n. 6 (5th Cir. 2009) (MCS-90 endorsement relates solely to duty to indemnify, not duty to defend). Therefore, if Canal has a duty to defend PST in the state court action - as Coleman urges - it must stem from the PST policy itself, rather than the MCS-90 endorsement.

As a threshold matter, the parties disagree as to which state's substantive law should be applied to interpret the policy. A district court hearing a diversity suit is to apply the choice-of-law rules of the state in which the action is brought. Cherokee Pump & Equip. Inc. v. Aurora Pump, 38 F.3d 246, 250 (5th Cir. 1994) (citing Klaxon Co. v. Stentor Elec. Mfg. Co., Inc., 313 U.S. 487, 61 S. Ct. 1020, 85 L. Ed. 1477 (1941)). Under Mississippi law, a "[c]hoice of law analysis arises only when there is a true conflict between the laws of two states." Zurich Am. Ins. Co. v. Goodwin, 920 So. 2d 427, 432 (Miss. 2006). In other words, a choice of law analysis is only necessary when there is a conflict of laws that would have an effect on the outcome of the case. See Hartford Underwriters Ins. Co. v. Found. Health Servs., 524 F.3d 588, 593 (5th Cir. 2008) (choice of law analysis was necessary because Mississippi law conflicted with Louisiana law as to viability of cause of action); Ingalls Shipbuilding v. Fed. Ins. Co., 410 F.3d 214, 230 (5th Cir. 2005) (choice of law analysis was necessary because there was a conflict between Mississippi law and Texas law as

7

to an issue before the Court).

In the present case, there is no such conflict. In Mississippi, an insurer is obliged to defend its insured if "the complaint states a claim that is within or arguably within the scope of coverage provided by the policy." Am. Guar. & Liab. Ins. Co. v. 1906 Co., 273 F.3d 605, 610 (5th Cir. 2001) (citing Centennial Ins. Co. v. Ryder Truck Rental, Inc., 149 F.3d 378, 383 (5th Cir. 1998); and State Farm Mut. Auto. Ins. Co. v. Scitzs, 394 So. 2d 1371, 1373 (Miss. 1981)); see also QBE Ins. Corp. v. Brown & Mitchell, Inc., 591 F.3d 439, 2009 U.S. App. LEXIS 27747, *7 (5th Cir. 2009). An insurer is justified in refusing to defend only if it is clear from the face of the complaint that the allegations therein are not covered. See Merchants Co. v. American Motorists Ins. Co., 794 F. Supp. 611, 617 (S.D. Miss. 1992). "[T]he ultimate outcome or merit of the claim is irrelevant with regard to the question of a duty to defend. As long as the claim is arguably covered by the insurance policy, the duty to defend is triggered." Delta & Pine Land Co. v. Nationwide Agribusiness Ins. Co., 530 F.3d 395, 399 (5th Cir. 2008) (punctuation and citation omitted). "[A]ny doubt as to the existence of a defense obligation is . . . resolved in favor of the insured." Liberty Mutual Fire Ins. Co. v. Canal Ins. Co., 177 F.3d 326, 331 (5th Cir. 1999).

Similarly, in Tennessee "the insurer has a duty to defend when the underlying complaint alleges damages that are within the risk covered by the insurance contract and for which there is a potential basis for recovery." Travelers Indem. Co. of Am. v. Moore & Assocs., 216 S.W.3d 302, 305 (Tenn. 2007) (citing St. Paul Fire & Marine Ins. Co. v. Torpoco, 879 S.W.2d 831, 835 (Tenn. 1994)). "The duty to defend is broader than the duty to indemnify because the duty to defend is based on the facts alleged, while the duty to indemnify is based upon the facts found by the trier of fact." Id.; see also Gen. Agents Ins. Co. of Am. v. Mandrill Corp., 243 Fed. Appx. 961, 964 (6th

Cir. 2007) ("pleadings test" to determine whether a duty to defend exists "does not depend on the actual facts on which the claimants base their claim, but only the allegations in the pleadings"). Any doubts are to be resolved in favor of the insured. Travelers Indem. Co. of Am., 216 S.W.3d at 305.

In general terms, the PST policy provides coverage for bodily injury and property damage arising out of the use of "an automobile which is owned by the named insured and described in the declarations." It is undisputed that the named insured on the PST policy is P. S. Transport, Inc., while the truck involved in the accident belonged to Briggs. It is also undisputed that the vehicle described in the declarations of the PST policy is a 1993 International truck bearing the Vehicle Identification Number 1HSRDEMR6PH506906, while the vehicle involved in the accident was a 1995 International truck bearing the Vehicle Identification Number 2HSFHAER1SC056029. Therefore, the truck involved in the accident was neither owned by the named insured nor described in the policy declarations. Accordingly, the PST policy - by clear and unambiguous terms - does not provide coverage for bodily injury or property damage arising from its use.

However, the Court's determination that the policy does not provide coverage for damages stemming from the accident is not necessarily dispositive as to Plaintiff's potential duty to defend under either Mississippi or Tennessee law. Both states look to the factual allegations of the complaint - rather than the actual facts - to determine whether the insurer has such a duty. Am. Guar. & Liab. Ins. Co., 273 F.3d at 610; Travelers Indem. Co. of Am., 216 S.W.3d at 305. The state court complaint filed by Bernetta and Glen Coleman against Briggs and PST alleges that "Briggs was carelessly and negligently parked in a 1995 Black International tractor truck." The vehicle described in the declarations of the PST policy is a *1993* International truck, and the PST policy only provides coverage for bodily injury and property damage arising out of the use of "an automobile

9

. . . described in the declarations." Therefore, it is clear from the factual allegations of Coleman's state court complaint that no coverage exists under the PST policy. Accordingly, Canal has no duty to defend PST in the state court action under either Mississippi or Tennessee law. See Am. Guar. & Liab. Ins. Co., 273 F.3d at 610 (complaint must state a claim arguably within the scope of coverage); Travelers Indem. Co. of Am., 216 S.W.3d at 305 (complaint must state a claim for damages within the risk covered by the policy).

## D. *MCS-90 Endorsement*

Congress empowered the Secretary of Transportation to "prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts . . . covering public liability, property damage, and environmental restoration for the *transportation of property* by motor carrier . . . ." 49 U.S.C. § 31139(b)(1) (emphasis added). Similarly, the regulations are applicable to "for-hire motor carriers operating motor vehicles *transporting property* in interstate or foreign commerce." 49 C.F.R. § 387.3(a) (emphasis added). In the present case, there is no dispute that Briggs was not transporting property at the time of the accident. Therefore, Canal argues that the MCS-90 endorsement does not impose any obligations upon it with respect to the subject accident. Coleman contends that the remedial purpose of the endorsement and the policy behind it dictate a broader interpretation of the statute and regulation cited above.

In Lincoln General Insurance Company v. Morquecho, the Fifth Circuit addressed the issue of whether the MCS-90B endorsement provided coverage for an accident that occurred outside the United States. 501 F.3d 436 (5th Cir. 2007). The MCS-90B endorsement is required by the regulations promulgated under 49 U.S.C. § 31138, which regulates the transportation of passengers, rather than property. See 49 U.S.C. § 31138(a); 49 C.F.R. § 387.39. The MCS-90B endorsement

is virtually identical to the MCS-90 endoresement.  Compare 49 C.F.R. § 387.39, with 49 C.F.R. § 387.15.  Section 31138 provides, in relevant part, that the Secretary of Transportation "shall prescribe regulations to require minimum levels of financial responsibility sufficient to satisfy liability amounts . . . covering public liability and property damage for the transportation of passengers by commercial motor vehicles in the United States . . . ."  49 U.S.C. § 31138(a).  Therefore, the Court held that the statute required "minimum levels of financial responsibility only for the part of the transportation that occurs 'in the United States.'"  Lincoln Gen. Ins. Co., 501 F.3d at 441 (quoting 49 U.S.C. § 31138(a)).  Accordingly, "the endorsement does not require an insurer to pay judgments recovered against the insured if the transportation of passengers by motor vehicle does not occur in the United States."  Id.  While Lincoln General does not provide specific guidance as to how the Court must interpret the "transportation of property" language at issue, it establishes that the Fifth Circuit applies a strict textual analysis when determining the scope of coverage for an endorsement such as the MCS-90 or MCS-90B.

The only federal case to squarely address the "transportation of property" language is Brunson v. Canal Ins. Co., 602 F. Supp. 2d 711 (D.S.C. 2007), wherein the United States District Court for the District of South Carolina concluded that an insurer was not required to indemnify its insured for a state court judgment for a variety of reasons.  Id. at 719.  First, the driver was "not engaged as a for-hire motor carrier pursuant 49 C.F.R. § 387.3 at the time of the accident," as he was not being paid by anyone at the time of the accident.  Id. at 716.  Second, the driver was not transporting property at the time of accident, as he was not hauling cargo when it happened.  Id.  Finally, the driver was not engaged in interstate commerce at the time of the accident, as he left his South Carolina home and traveled to another location within South Carolina on a purely personal

11

errand, without the requisite "fixed and persisting intent . . . to travel outside of South Carolina" necessary to support a finding that he was engaged in interstate commerce. Id. at 718.

In reaching its conclusion that the MCS-90 endorsement did not apply, the Court noted that the public policy argument asserted by the injured third party was "compelling." Id. at 719. However, the Court observed that "the caselaw cited simply does not broadly apply the public policy to provide coverage under the facts of this case and similar cases. The caselaw does focus on the language of the relevant statutory and regulatory provisions at issue in this case." Id. The Court further noted that "Congress and the appropriate regulatory agencies could broaden and clarify the relevant language now in place to provide coverage in factual scenarios similar to the one in this matter." Id.

The Fifth Circuit has looked to interpretations of Section 31138 (regulating the transportation of passengers) to guide its analysis of Section 31139 (regulating the transportation of property). Galindo, 2009 U.S. App. LEXIS 20492 at *3-*5. Therefore, the Court shall apply the strict textual analysis employed by the Fifth Circuit in Lincoln General. See Lincoln Gen. Ins. Co., 501 F.3d at 441. The Secretary of Transportation was only empowered to issue regulations prescribing minimum levels of financial responsibility to satisfy judgments for the transportation of property. 49 U.S.C. § 31139(b)(1). The regulations explicitly state that they are only applicable to "for-hire motor carriers operating motor vehicles transporting property. . . ." 49 C.F.R. § 387.3(a). Therefore, the statute requires minimum levels of financial responsibility only when the motor carrier is transporting property. Lincoln Gen. Ins. Co., 501 F.3d at 441; 49 U.S.C. § 31139(b)(1); 49 C.F.R. § 387.3(a). Accordingly, the MCS-90 endorsement to the PST policy does not require Canal to pay any judgment recovered against its insured with respect to the accident that is the subject of the state

court action.

In reaching this conclusion, the Court gave due consideration to Coleman's public policy arguments. Indeed, "[t]he endorsement 'had its origin in the ICC's desire that the public be adequately protected when a licensed carrier uses a leased vehicle to transport goods pursuant to an ICC certificate.'" Wells, 484 F.3d at 316-17 (quoting Empire Marine Ins. Co. v. Guar. Nat'l Ins. Co., 868 F.2d 357, 362-63 (10th Cir. 1989)). However, as the United States District Court for the District of South Carolina noted, "Congress and the appropriate regulatory agencies could broaden and clarify the relevant language now in place to provide coverage in factual scenarios similar to the one in this matter." Brunson, 602 F. Supp. 2d at 719. In the absence of such clarification, the Court must interpret the statutes and regulations as written.[3] See Consumers County Mut. Ins. Co. v. PW & Sons Trucking Co., 307 F.3d 362, 367 n. 7 (5th Cir. 2002) (citing with approval Perry v. Harco Nat'l Ins. Co., 129 F.3d 1072, 1074-75 (9th Cir. 1997) (rejecting a context-specific approach to regulatory interpretation and holding that definition in regulations applied generally throughout regardless of whether its application directly promoted a regulatory goal)).

## IV. CONCLUSION

For the reasons stated above, the Court denies Canal's Motion to Enforce Settlement Agreement [31], grants Canal's Motion for Summary Judgment [35], and denies Coleman's Motion for Summary Judgment [51].

Canal amended its Complaint to remove any cause of action pertaining to the Briggs policy.

---

[3]Coleman also argues that this interpretation will result in piecemeal coverage depending on whether the motor carrier is actually transporting property at the time of the accident. The Fifth Circuit Court of Appeals faced a similar quandary in Lincoln General, and it did not balk at the prospect of piecemeal coverage depending on whether the motor carrier was transporting passengers within or without the United States. Lincoln Gen. Ins. Co., 501 F.3d at 441.

13

As a result, this decision disposes of any case or controversy arising from the Amended Complaint, and this case is closed.

An order consistent with this opinion will be released on this the 4th day of March, 2010.

/s/ Sharion Aycock  
**UNITED STATES DISTRICT JUDGE**